IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| WAYNE A. GRAHAM, | ) | |
| Petitioner, | ) | No. C 06-7313 CRB (PR) |
| | ) | |
| vs. | ) | ORDER DENYING |
| | ) | PETITION FOR A WRIT OF |
| BEN CURRY, Warden, | ) | HABEAS CORPUS |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

Petitioner, a state prisoner incarcerated at the Correctional Training Facility in Soledad, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging the California Board of Prison Terms' ("BPT") April 27, 2005 decision to deny him parole.

Per order filed on February 26, 2007, the court found that petitioner's claim that the BPT's decision finding him not suitable for parole does not comport with due process appears colorable under § 2254, when liberally construed, and ordered respondent to show cause why a writ of habeas corpus should not be granted.  Respondent has filed an answer to the order to show cause and petitioner has filed a traverse.

**BACKGROUND**

On May 16, 1990, petitioner was convicted by a jury in Los Angeles County superior court of second-degree murder with use of a firearm. He was sentenced to17 years to life in state prison with the possibility of parole.

On April 27, 2005, petitioner appeared before the BPT for a parole consideration hearing for the second time. The BPH found him unsuitable for parole and denied him a subsequent hearing for three years.

Petitioner unsuccessfully challenged the BPT's April 27, 2005 decision in the state superior, appellate and supreme courts. After the Supreme Court of California denied his final state habeas petition on September 27, 2006, the instant federal petition for a writ of habeas corpus followed.

**DISCUSSION**

A.      Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified under 28 U.S.C. § 2254, provides "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction." White v. Lambert, 370 F.3d 1002, 1009-10 (9th Cir. 2004). Under AEDPA, this court may entertain a petition for habeas relief on behalf of a California state inmate "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding." Id. at § 2254(d).  Under this standard, federal habeas relief will not be granted "simply because [this] court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Williams v. Taylor, 529 U.S. 362, 411 (2000).

While circuit law may provide persuasive authority in determining whether the state court made an unreasonable application of Supreme Court precedent, the only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

B.      Legal Claims and Analysis

Petitioner seeks federal habeas corpus relief from the BPT's April 27, 2005 decision finding him not suitable for parole, and denying him a subsequent hearing for three years, on the ground that the decision does not comport with due process.  Petitioner claims that the BPT's decision is arbitrary and not supported by some evidence in the record.  He also claims that the state parole statue is constitutionally vague and that the BPT must provide him with a fixed parole release date under its sentencing matrices.

California's parole scheme provides that the board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." Cal. Penal Code § 3041(b).  In making this determination, the board must consider various factors, including the prisoner's social history, past

criminal history, and base and other commitment offenses, including behavior before, during and after the crime.  See Cal. Code Regs. tit. 15, § 2402(b) – (d).

California's parole scheme "gives rise to a cognizable liberty interest in release on parole which cannot be denied without adequate procedural due process protections."  Sass v. California Bd. of Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002). It matters not that, as is the case here, a parole release date has not been set for the inmate because "[t]he liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate."  Biggs v. Terhune, 334 F.3d 910, 914-15 (9th Cir. 2003).

Petitioner's due process rights require that "some evidence" support the parole board's decision finding him unsuitable for parole.  Sass, 461 F.3d at 1125 (holding that the "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985), applies to parole decisions in § 2254 habeas petition); Biggs, 334 F.3d at 915 (same); McQuillion, 306 F.2d at 904 (same).  This "some evidence" standard is minimally stringent and ensures that "the record is not so devoid of evidence that the findings of [the BPT] were without support or otherwise arbitrary." Hill, 472 U.S. at 457.  Determining whether this requirement is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."  Id. at 455-56 (quoted in Sass, 461 F.3d at 1128).

Due process also requires that the evidence underlying the parole board's decision have some indicia of reliability.  Biggs, 334 F.3d at 915; McQuillion, 306 F.3d at 904.  Relevant in this inquiry "is whether the prisoner was afforded an opportunity to appear before, and present evidence to, the board."  Morales v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on

4

other grounds, 514 U.S. 499 (1995).  In sum, if the parole board's determination of parole unsuitability is to satisfy due process, there must be some evidence, with some indicia of reliability, to support the decision.  Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005).

The record shows that the BPT panel afforded petitioner and his counsel an opportunity to speak and present their case at the hearing, gave them time to review petitioner's central file, allowed them to present relevant documents and provided them with a reasoned decision in denying parole.

The panel concluded that petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety if released from prison."  Apr. 27, 2005 Hr'g Tr. at 67 (Resp't Ex. 2).  It based its decision on several grounds, including the circumstances surrounding the offense:

> On May 22, 1989, at approximately 12:15 a.m., Hector Trujillo was working as an unarmed security guard at "Pete's Bar," 4629 South Vermont, Los Angeles, California.  [Petitioner] attempted to gain entry into the bar but was stopped because it was overcrowded and the owner had given Trujillo orders not to let anyone else in.  [Petitioner] and Trujillo had words and [petitioner] started shaking the gate that had been closed across the entry.  Trujillo sprayed mace at him and [petitioner] reached into the front of his waistband and withdrew a revolver.  [Petitioner] extended his arm without saying anything, fired one shot though the gate into Trujillo's chest.  Trujillo was transported to [a medical center] where he died during surgery.  Trujillo was pronounced dead at 3:23 a.m. from a gunshot wound to the left shoulder/chest area.  The bullet, which was removed from the victim, was identified as a .38/.357 magnum caliber "Silver Tip Hollow Point" design.  [Petitioner] fled the area after the shooting and was arrested the following afternoon.  [Petitioner] was subsequently charged with murder.

Id. at 16-18 (quoting Probation Officer's Report at 2-3 (Resp't Ex. 6)).

The panel explained that it found that the offense was carried out in an "especially cruel and callous" manner in that "[s]hooting a security guard or authority figure over an incident at a nightclub while people are in that nightclub

shows a total callous disregard for those in your neighborhood, for your fellow man and for the rules and laws that govern and protect our society." Id. at 67. The offense was also carried out in a manner that shows "an exceptionally callous disregard for another human being" and "no respect for life." Id. at 67-68. And the motive went "beyond being trivial" to "downright inexplicable" and "deplorable." Id. at 68. The panel found that petitioner had a lengthy escalating criminal history of "violent and assaultive behavior," including an instance when he "sexually assaulted another in a manner calculated to inflict pain and injury upon the victim." Id. at 68-69. Petitioner had also been arrested for drugs and had been deported twice, but illegally re-entered this country each time. The panel found that petitioner had exhibited "[t]otal disregard for the laws of this country" and had "failed to profit from society's previous attempts to correct your criminality [through] adult probation, parole, county jail and prior prison term." Id. at 69. The panel found that petitioner had "not sufficiently participated in all the kinds of self-help program he needs." Id. at 69-70. Petitioner must "involve himself in positive kinds of programs" that will help him "discuss, understand and cope with stress in a non-destructive manner." Id. at 70-71. The panel found that petitioner had no parole plans in California, although he did have some support systems in Belize. Id. at 70. The panel commended petitioner for not receiving any major "disciplinaries" since his last hearing and completing a computer repair program; however, it concluded that "those positive aspects of your behavior do[] not outweigh the factors of unsuitability." Id. at 71. The panel stressed that petitioner must "make and demonstrate the ability to maintain" positive gains while in prison. Id.

The state superior court affirmed the decision of the BPT. The court found that "the record contains 'some evidence' to support the Board's finding that

Petitioner is unsuitable for parole." In re Graham, No. BH003512, slip op. at 1 (Cal. Super. Ct. Sept. 9, 2005) (Resp't Ex. 7). The court specifically found that there was some evidence that the murder "was carried out in a dispassionate manner," and that petitioner had a "prior record of violence and a record of committing sadistic sexual offenses," an unstable social history based on his entering this country illegally and subsequently selling drugs, and a lack of adequate parole plans in California. Id. at 2-3. The court noted that although petitioner faced deportation to Belize and had letters offering him residence and employment in that country, it was not "unrealistic for the Board to expect petitioner to establish alternative parole plans in California" because each time he has been deported to Belize he has reentered the United States illegally and turned to a life of crime. Id. at 3.

The California Court of Appeal also affirmed the decision of the BPT and concluded that the record "reflects some evidence to support the challenged decision." In re Graham, No.B186841, slip op. at 1 (Cal. Ct. App. Nov. 9, 2005) (Resp't Ex. 8) (citation omitted). The Supreme Court of California summarily denied petitioner's final petition challenging the BPT's April 27, 2005 decision. In re Graham, No. S140461, slip op. at 1 (Cal. Sept. 27, 2006) (Resp't Ex. 10).

The state courts' rejection of petitioner's due process claim was not contrary to, or involved an unreasonable application of, the Hill standard, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). The BPT's April 27, 2005 decision to deny petitioner parole after his second parole consideration hearing is supported by some evidence in the record and that evidence bears some indicia of reliability. See, e.g., Rosas, 428 F.3d at 1232-33 (upholding denial of parole based on gravity of offense and psychiatric reports); Biggs, 334 F.3d at 916 (upholding denial of parole based solely on gravity of

offense and conduct prior to imprisonment); <u>Morales</u>, 16 F.3d at 1005 (upholding denial of parole based on criminal history, cruel nature of offense and need for further psychiatric treatment).  The inquiry under <u>Hill</u> is simply "whether there is <u>any</u> evidence in the record that could support the conclusion reached by the [BPT]." <u>Hill</u>, 474 U.S. at 455-56 (emphasis added).  There is – the facts surrounding the crime reasonably suggest that it was triggered by a trivial motive and carried out in a cruel and callous fashion showing little regard for human life; petitioner has a prior history of violence and sadistic sexual offenses; petitioner has an unstable social history characterized by repeatedly reentering the United States illegally and resorting to crime; petitioner lacked parole plans in California; and, as the BPT stressed, petitioner had not sufficiently participated in self-help programs to gain adequate insight into the crime or demonstrated the ability to maintain his positive in-prison conduct over an extended period of time. <u>Cf.</u> Cal. Code Regs. tit. 15, § 2402(c) & (d) (listing circumstances tending to show unsuitability for parole and circumstances tending to show suitability). Although there were some factors tending to support suitability, it is not up to this court to "reweigh the evidence." <u>Powell v. Gomez</u>, 33 F.3d 39, 42 (9th Cir. 1994).  The panel's legitimate concern with the facts surrounding the commitment offense (namely that the crime was triggered by a trivial motive and carried out in a cruel and callous fashion), petitioner's history of violence and sexual offenses, unstable social history and recidivism, lack of any parole plans in the United States, and insufficient participation in self-help groups to gain adequate insight into the crime, constitutes some evidence under <u>Hill</u> in support of the board's determination that petitioner posed an unreasonable risk of danger to society if released from prison on April 27, 2005.  <u>See</u> <u>Hayward v. Marshall</u>, 512 F.3d 536, 543 (9th Cir. 2008) (test is not whether some evidence supports the reasons cited

for denying parole, but whether some evidence indicates a prisoner's release unreasonably endangers public safety).[1]

Petitioner also claims that the state parole statue is constitutionally vague and that the BPT must provide him with a fixed parole release date under its sentencing matrices. The claims are without merit. The state courts' rejection of the claims was not contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d).

While California Penal Code section 3041, subsection (a) provides that the BPT "shall normally set a parole release date" at a prisoner's first parole hearing, subsection (b) provides that the BPT shall not set a parole release date if "it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual . . . ." The "natural and reasonable" reading of the statute is that subsection (a) applies only if subsection (b) does not apply and, therefore, the BPT will not set a parole date under subsection (a) if it determines that, under

_____

[1]Petitioner's objection to the panel's reliance on his lack of parole plans in California does not compel a different conclusion because the horrific facts surrounding petitioner's senseless murder of an unarmed security guard are themselves enough to support the BPT's decision because petitioner's minimum term of 17 years had not yet expired when the BPT denied him parole on April 27, 2005. See Irons v. Carey, 505 F.3d 846, 853-54 (9th Cir. 2007) (noting that Ninth Circuit has upheld denial of parole based solely on commitment offense where prisoners have not yet served minimum number of years required by their sentence). The same holds true for petitioner's objection to one of the panel member's comments on deportation. Moreover, the superior court did not unreasonably determine that the panel member's comments did not show that the BPT's decision was pre-determined. See In re Graham, No. BH003512, slip op. at 3 (Cal. Super. Ct. Sept. 9, 2005).

subsection (b), public safety requires a lengthier incarceration.  See In re Dannenberg, 34 Cal. 4th 1061, 1087 (2005).  This procedure, "in which the suitability determination precedes any effort to calculate a parole release date, has long been noted in the case law."  Id. at 1080-81.  The parole statute is not unconstitutionally vague.  Cf. United States v. Rodriguez, 360 F.3d 949, 954 (9th Cir. 2004) (Hobbs Act's definition of commerce is well-established and therefore not unconstitutionally vague).

The Supreme Court of California has held that the BPT need not evaluate an inmate's crime against the sentencing matrices because unless and until the inmate is found suitable for parole a date for the inmate's release need not be set. In re Dannenberg, 34 Cal. 4th 1061, 1070-01 (2005).  This court is bound by the Supreme Court of California's interpretation of California law.  See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (state court's interpretation of state law binds federal court sitting in habeas).

## CONCLUSION

For the reasons set forth above, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:   May 20, 2008

_____
CHARLES R. BREYER
United States District Judge